STATE ex rel. CUNNINGHAM et al., PLAINTIFFS, *v.* THOMAS et al., STATE BOARD OF EQUALIZATION, DEFENDANTS.

STATE AND COUNTY BOARDS OF EQUALIZATION—CONSTITUTIONAL LAW—TAXATION—VALUATION OF PROPERTY.

1. *Constitutional Law—Taxation—Valuation of Property.*
    Under sections 2 and 3, art. 13, const., all taxable property within this state must be assessed and taxed on a valuation fixed at its actual cash value, or as near such value as is reasonably practicable. The test of such value is the cash price for which the property valued would sell in open market.

2. *Same—Statute—Validity of.*
    Sections 1 and 5 of the revenue act (chapter 129, p. 423, Sess. Laws 1896), containing provisions similar to those in sections 2 and 3, art. 13, const., are valid, not being in conflict with the constitutional provisions.

3. *Same—State and County Boards of Equalization.*
    Under section 11, art. 13, const., the state board of equalization has power, if necessary for the purpose of equalization, either

to raise or lower the total valuation of the property of any county fixed by the county board and assessor, even though it may, by such action, raise or lower the aggregate valuation of all the counties in the state; but it cannot encroach upon the domain of the county boards in an attempt to adjust and equalize valuations of property within the county, as between individuals. A county board, under the same section of the constitution, has power to equalize the valuation of property within its county between individuals and between localities, even though, by its action, the total valuation of the property of the county may be increased or decreased.

4  *Same—Statutes—Validity of.*

Section 71 and subdivision 9 of section 82 of the revenue act are not in conflict with the provisions of section 11 of article 13 of the constitution. Nor is section 83 of the same act, respecting the classification of taxable property for the purpose of taxation, in conflict with section 2 of article 13 of the constitution. The provisions of section 83 are mandatory, and an order of the state board in violation thereof is ineffectual, and cannot be enforced.

5  *Taxation—Money—Valuation.*

Under the constitution and statutes of this state, money is the standard of valuation for all taxable property, and no board or officer can assess money for more than its legal value; nor can the state board change its valuation on the assessment roll when listed at its legal value.

(No. 860.   Decided Oct. 2, 1897.)

Application by the State, on relation of J. A. Cunningham and others, for a writ of *certiorari* to J. J. Thomas and others, composing the State Board of Equalization. Judgment for relators.

*E. B. Critchlow and John M. Zane,* for plaintiffs:

It has been held that the constitutional provision similar to ours distributes the power to assess and the power to raise or lower the assessment in such manner as to give to the county board of equalization the power to

raise or lower individual assessments within the county, and to give to the state board of equalization the power to raise or lower the valuation of the county taken as a whole.  *Wells, Fargo Company* v. *Board of Equalization,* 56 Cal. 194; *People* v. *Supervisors,* 59 Cal. 321; *Railroad Co.* v. *State Board,* 60 Cal. 12; *State* v. *Vaile,* 122 Mo. 33.

This same principle will be found in the provisions, statutory and constitutional, of other states.   *Oregon Co.,* v. *Croisan,* 30 Pac. 220; Desty on Taxation, 496; *Spaulding* v. *Hill, supra.*

*A. C. Bishop, Atty. Gen.,* and *Arthur Brown,* for defendants:

We have been unable to find any adjudicated cases based upon constitutional and legislative provisions similar to our own, but as bearing upon the question, by analogy, the court's attention is called to the following cases.   *Wells, Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194; *People* v. *Dunn,* 59 Cal. 328; *Getchel* v. *Supervisors Polk Co.,* 51 Iowa 107; *Black* v. *McGonigle,* 103 Mo. 193; *Mayor, etc., of N. Y.* v. *Davenport,* 92 N. Y. 604; *Hall* v. *Helmer,* 12 Neb. 87; *Harvy* v. *Board of Supervisors, etc.,* 44 Iowa 203.

BARTCH, J.:

This is an original application in this court, for a writ of *certiorari* to command the state board of equalization to certify and return to the supreme court all the proceedings concerning a certain order of the board, whereby the assessment of the property in Salt Lake county for the year 1897 was to be increased.  The writ was issued, and the board filed its answer, and demurred to the petition.  A demurrer to the answer was also filed.  Thereupon the case was argued and presented on its merits, and will likewise be considered.

The most important question to be determined is whether the state board of equalization has the power so to raise the total valuation of the property of any county in the state as to increase the aggregate valuation of all the counties of the state, as returned, to the state board, by the several county assessors and county boards of equalization. On behalf of the relators it is contended that the powers of the state board are limited, by provisions of the constitution and of statutes, to an adjustment and equalization of the total valuation of the several counties, as fixed by the assessors and county boards, and that it has no power to increase the aggregate valuation of the property of the state so placed upon it. For the defendant board it is insisted that it has power to raise or lower the total valuation of the property of the state, so as to render the assessment equal and uniform in the several counties, and make it conform to the true value, in money, of the property assessed.

The provisions of the constitution, so far as material to the decision of this case, are as follows: In section 2 of article 13 it is provided that "all property in the state, not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law." Under this provision all taxable property must be assessed and taxed "in proportion to its value." It will be noticed that "value" is here referred to in a comparative manner, and is to be "ascertained as provided by law." The word "proportion" doubtless has reference to sameness or likeness in value of property; that is, all property must be taxed at the same relative value. If this provision were to be considered by itself, it might be contended with some force that the legislature had power to provide that all property should be assessed at a basis less than its

full value, and this might still be considered as " in proportion to its value." The real intent, however, of the framers of the constitution, is made more manifest in section 3 of article 13, which contains this language: The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe by general law such regulations as shall secure a just valuation for taxation of all property; so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property." This provision is closely related to the one in section 2, and directs the legislature not only to provide a uniform and equal rate of assessment and taxation, so that every subject owning property shall pay the same rate of tax as every other such subject, but also declares that all property shall be assessed at a basis which shall be "according to its value in money." It is evident that the term "according to its value in money " means that all property shall be valued, for the purposes of assessment, as near as is reasonably practicable, at its full cash value; in other words, that the valuation for assessment and taxation shall be, as near as reasonably practicable, equal to the cash price for which the property valued would sell in open market, for this is doubtless the correct test of the value of property. The manifest intention is that all taxable property shall bear its just proportion of the burdens of taxation. These two sections of the constitution harmonize with each other; and, by reading and considering them together, it becomes clear that all taxable property within this state must be assessed and taxed on a valuation fixed at its actual cash value, or as near such value as is reasonably practicable. In order, it would seem, to guard against unjust valuations which might

result from whatever cause, and to secure greater uniformity and equality in taxation, it was provided in section 11 of the same article as follows: " Until otherwise provided by law, there shall be a state board of equalization, consisting of the governor, state auditor, state treasurer, secretary of state, and attorney general; also, in each county in this state, a county board of equalization, consisting of the board of county commissioners of said county. The duty of the state board of equalization shall be to adjust and equalize the valuation of the real and personal property among the several counties of the state. The duty of the county board of equalization shall be to adjust and equalize the valuation of the real and personal property within their respective counties. Each board shall also perform such other duties as may be prescribed by law." By this section are created the state and county boards of equalization, and their duties defined. Under its provisions, the controversy in this case mainly arose.

The provision relating to county boards was before us in the case of *Salt Lake City* v. *Armstrong,* 15 Utah 473; and we there held that the county board of equalization might raise or lower the valuation of any class of property in the county, or of real estate in any particular locality, for the purpose of adjustment and equalization of values. Mr. Chief Justice Zane, delivering the opinion of the court, in reference to section 11, said: " The last section makes it the duty of the county board to adjust and equalize the valuation of the real and personal property within their respective counties, without prescribing the mode to be adopted. This leaves the board the discretion to adopt any reasonable and just method, and if, upon an examination and investigation of the assessment, the board should be of the opinion that the real estate in a particular locality is too high, and that in other localities

the assessment is too low, it would appear to be a reasonable exercise of its authority to prescribe the localities, and raise or lower the valuation, so as to equalize the assessment in such districts." The action of that board is not restricted to the total valuation made by the assessor. Evidently, its duty is to adjust and equalize the valuation of the property within its county. Its action is therefore confined within the limits of the county; but, within such limits, it has power to raise or lower the individual assessments, so as to make the valuation uniform and equal, and so that the burden of taxation may be apportioned equitably among the taxpayers in proportion to the value of their property. Its action may extend to any locality or particular district of the county. It has the right to determine the value of property, and, if necessary for the purpose of equalization, may raise the valuation of one district, and lower that of another, even though by such action the total valuation of the property of the county may be increased or decreased.

What has been said respecting county boards applies with equal force to the state board, except that it may not encroach upon the domain of the county board in an attempt to adjust and equalize the valuation of property within the county. With this exception, it will be observed that the constitutional duties and powers of the state and county boards contained in this section are precisely the same. Where the same duty is imposed, and the same power exists, there the same result may be expected, as intended, from the performance of such duty, and the exercise of such power. How, then, can it be maintained that the state board cannot increase the total valuation of the state when necessary for the purpose of equalization, while the county board may, for such purpose, increase the total valuation of the county, even though it

may thereby increase the aggregate valuation of the state? It is true, the action of the state board is confined to counties as component parts of the state, while the action of the county board extends directly to the valuation of the property of the individuals of the county; but the plain duty of each is to adjust and equalize the valuation, so as to make it uniform and equal on all taxable property, according to its value in money. Suppose the property in all the counties of the state, except one, had been assessed, by the assessors and county boards, at its actual cash value, as required by the constitution, and that the property in the one was assessed at only half its cash value; how could the state board, in accordance with its sworn duty, adjust and equalize the valuation, so that all taxable property in the state would be assessed at its value in money, if the board had no power to raise the aggregate valuation? To state the proposition is sufficient to demonstrate the impracticability of the contention of the relators, and the impossibility of a compliance with the requirements of the constitution, the provisions of which are mandatory and binding equally upon the legislature, the courts, and all officers of the government. The courts have no power to override these provisions, or explain away their effect and operation by judicial construction. Whether the creation of a state board of equalization, with such power, was a wise thing for our constitution makers to do, or whether it constitutes the board a board of assessors, does not concern us. It is sufficient to say that the power exists, and the legislature is to " provide by law a uniform and equal rate of assessment and valuation of all the property in the state," and, in addition to the state and county boards, shall provide the means to ascertain the value of property in money, and prescribe regulations to secure a just valu-

ation for taxation. The legislature may enact any law, respecting the subject of taxation, not prevented by the constitution. Except as limited by the constitution of this state or of the United States, its power is practically absolute, and its enactments are void only when in conflict with or prevented by the paramount law. Cooley, Const. Lim. pp. 200, 201.

Having considered the above constitutional provisions, it becomes important now to examine the statutory enactments, so far as applicable to this case, to ascertain whether the state board, in making the order complained of, acted within the jurisdiction and power conferred by the constitution and statutes. Section 1 of the revenue act (chapter 129, p. 423, Sess. Laws 1896) reads: "All property in this state, not exempt under the laws of the United States, or under the constitution of this state, shall be taxed in proportion to its value, as hereinafter provided." Section 5: "All taxable property must be assessed at its full cash value. Land and the improvements thereon must be separately assessed." As will be observed, there is nothing in either of these sections of the statute which conflicts with the provisions of sections 2 and 3 of the constitution. Under section 5, all taxable property must be assessed at its full cash value; but, as we have seen, this is so under the constitution, and, as to assessing land and improvements separately, there is nothing in the constitution to prevent it. Section 71, relating to county boards, which reads as follows: "The board has power, after giving notice in such manner as it may, by rule, prescribe, to increase or lower any assessment contained in the assessment book, so as to equalize the assessment of the property contained therein, and make the assessment conform to the true value of such property in money,"—has been referred to by counsel for

the defendants, by comparison with subdivision 9 of section 82, referring to the powers of the state board, which reads: "At such meetings to equalize the valuation of the taxable property of the several counties in this state for the purpose of taxation; and to that end, under such rules of notice to the county auditors of the county affected thereby, as it may prescribe, to increase or lower any assessment contained in the assessment book, so as to equalize the assessment of the property contained therein, and make the assessment conform to the true value in money of the property assessed." It will be noticed that the power to equalize and raise or lower the valuation for the purposes of taxation is practically the same in both provisions, and entirely consistent with the provisions of section 11 of the constitution, above quoted. None of the statutory provisions thus far considered appear to conflict with the constitution, and hence are valid.

In *Salt Lake City* v. *Armstrong, supra,* this court held that the county board had such power as is conferred by section 71. If this decision is right, as we think it is, it is difficult, upon examination of the two provisions, to discern how a similar power can be denied the state board. Wise or unwise, the manifest object of the several constitutional and statutory enactments was an equitable apportionment of the burdens of the government among the several counties of the state. Evidently in pursuance of this object, the state and county boards were provided for in the constitution, so as to supervise the actions of the county assessors whose offices are created by the statute, and whose duty it is to list and value the property in the first instance. While it is the sworn duty of these officers to value and assess all taxable property equally and uniformly, at its full cash value, yet

current history does not fail to present the fact that, through mistake, carelessness, or incompetency, the grossest inequality frequently prevails in valuations; and, without a power lodged somewhere to adjust and equalize the valuations, not only might great injustice result, but also the constitutional requirements of a "uniform and equal rate of assessment and taxation on all property in the state" might be rendered a nullity. Among the highest acts of supreme power are the assessment and collection of taxes. They constitute a contribution imposed by the government upon the people for the service of the state. In return, the state affords protection to life, liberty, and property. Taxation is founded in necessity, for without revenue the state cannot exist; and as the process by which the property of the citizen is taken is of a somewhat summary character, although *quasi* judicial, it is highly important that acts of officers, fixing the amount to be paid by the individual and received by the state, should be well guarded, and, if inequality exists in the valuations, such valuations should be adjusted and made equal. This is within the province of the state board. While it must be conceded that there is some force in the argument that the assessors and county boards of equalization are in closer proximity to the property assessed, and that therefore they are better qualified and more able to judge of and estimate its value, and hence the aggregate valuation of the state, as fixed by them, should be final, and control, still the framers of the constitution, in their wisdom, have decreed otherwise, and we are bound by that decree. We are therefore of the opinion that the state board has jurisdiction in the premises, and authority, if necessary for the purpose of equalization, either to raise or lower the total valuation of the property of any county, fixed by

the county board and assessor, even though it may by such action raise or lower the aggregate valuation of all the counties in the state.

Counsel for the relators have cited and rely on the cases of *People* v. *Lothrop,* 3 Colo. 428, and *State* v. *Equalization Board,* 18 Mont. 473. We must decline to follow those decisions, because, as may be seen by examination and comparison, the provisions of the constitutions and laws of the states of Colorado and Montana respecting the subject of "revenue and taxation" are essentially and materially different from the provisions, on the same subject, contained in the constitution and laws of Utah.

The next material question is whether the state board, in making the order in controversy, regularly pursued its authority. Section 83 of the revenue act, in reference to the state board, provides: "When, after a general investigation by the board, the property is found to be assessed above or below its full cash value, the board may, without notice, so determine, and must add to or deduct from the valuation of: (1) the real estate; (2) improvements on such real estate; (3) the personal property, except money, such per centum respectively as is sufficient to raise or reduce it to its full cash value." It is contended by one of counsel for the defendant board that this section is in excess of constitutional authority, and therefore void; and reference is made to the provision of section 2 of the constitution, hereinbefore considered, as the one with which it is in conflict. We are unable to see in what respect section 83 is in conflict with that provision of the constitution which we have construed in connection with section 3 of that instrument, as providing for the assessment of all taxable property at its full cash value. Section 83 provides likewise. The constitu-

16 UTAH—7

tion is silent as to the classification of taxable property for the purposes of taxation. Section 83 provides for such classification, and how the valuation may be increased or reduced. This was a proper exercise of legislative power, in the absence of any constitutional limitation; and the section is valid, notwithstanding that it excepts money from its operation. That exception does not invalidate the statute, because, in respect to taxation, money is the constitutional standard of all values. The valuation of all property shall be "according to its value in money," is the mandate of the fundamental law.

It is insisted for the relators that the order in question not only does not conform to section 83, above quoted, but also that, in its operation, it would increase the valuation on money listed on the assessment roll, and that it is therefore invalid. The order is general in its terms, and does not specifically refer to each of the classes of property mentioned and designated in the statute. The state board has only such powers as are conferred upon it by the constitution and statutes, and its duties must be performed in accordance with their requirements. We think the provisions of section 83 respecting the classification of taxable property are mandatory. Such being the case, it was the duty of the board, when it found that the property of Salt Lake county was assessed too low, before making any order, to determine how much the valuation on the real estate ought to be raised, how much that of the improvements thereon, and how much that of the personal property, respectively, so as to make all the valuations conform to the constitutional standard, and then to make an order accordingly. The statute not having been pursued, the order was defective. It was also defective because it included money in its operation. It clearly cannot be held operative as to money, for, as appears from the record, each dollar of the relators, on

the assessment roll, is valued at a dollar; and, when money is so valued, no board or officer can add 5, per centum or any per centum to it. This is so under the constitution, which makes money the standard of valuation for all taxable property. The value of all property, however, cannot be determined in the same way. Because of its dissimilarity, the process by which the judgment is formed must vary, and probably as to all property, except money, perfect equality in valuations and assessments is unattainable, owing to the fallibility of the human judgment. The value of a dollar may be determined by ascertaining that it is what it purports to be. *Porter* v. *Railroad Co.*, 76 Ill. 594.

The legal value of a dollar in money is a dollar, and therefore to value and assess it at more than a dollar cannot be a valuation and assessment, " according to its value in money." This being so, the court will take notice, as matter of law, that money cannot be assessed for more than its legal value. Hence, from the nature of things, the state board cannot change the valuation of money on the assessment roll already assessed at its legal value, and thereby make it cease to conform to the mandate of the constitution. *People* v. *Dunn*, 59 Cal. 328.

It may be that the failure to except money of itself might not render the order void; but when that fact is considered in connection with the further fact, as shown by the record in this case, that the action of the board did not conform to the statute, the order cannot be upheld as a proper exercise of authority, and is therefore void. Having reached this conclusion, it is unnecessary to discuss any other question presented in this case. Judgment must be entered in favor of the relators that the order in question be set aside.

ZANE, C. J., concurs in the judgment. MINER, J., concurs.