STATE OF UTAH, UPON THE RELATION OF
JENNINGS BROTHERS INVESTMENT COM-
PANY, A CORPORATION, PLAINTIFF, v. FRAN-
CIS ARMSTRONG, L. E. HALL, AND JOSEPH
RAWLINS, COUNTY BOARD OF EQUALIZA-
TION OF SALT LAKE COUNTY, DEFENDANTS.

COUNTY BOARD OF EQUALIZATION — POWERS TO CHANGE ASSESSED
VALUATION — NOTICE TO PROPERTY OWNERS. SEC. 2575, R. S. 1898
— APPLIES TO INDIVIDUAL ASSESSMENTS. EQUALIZATION AND COL-
LECTION OF TAXES — NECESSITY AND USAGE — DUE PROCESS OF
LAW — SEC. 7, ART. 1, CONST.

1. *County Board of Equalization — Power to Change Assessed Valuation
— Notice to Property Owners.*
    Boards of County Commissioners sitting as Boards of Equaliza-
    tion have the right to raise or lower the assessed valuation of
    all property in a particular district without notice to each or
    any owner of such property; the Statute, Sec. 2574, giving suf-
    ficient notice to each individual owner of property in such
    district, to permit the raising or lowering of the entire valu-
    ation of the district.

2. *Section, 2575, R. S. 1898 — Applies to Individual Assessments.*
    Sec. 2575, R. S. 1808 applies only to cases where individual
    assessments are affected, not to those involving the property
    of an entire district or locality.

3. *Equalization and Collection of Taxes — Necessity and Usage — Due
    Process of Law — Sec. 7, Art. 1, Const.*
    The necessities of government and the usages of the people
    in this country have established a method of procedure
    in respect to the equalization and collection of taxes, differ-
    ent from that pursued by the courts, and such method has
    always been considered due process of law, and is not in viola-
    tion of Sec. 7, Art. 1, of the Constitution.

(Decided March 24, 1899.)

Original application for a writ of certiorari to command
the County Board of Equalization of Salt Lake County to

return to the Supreme Court all the proceedings concerning a resolution of the Board whereby the assessment of certain property in Salt Lake City for the year 1898 was increased.   *Writ denied.*

*Messrs. Marshall, Royle & Hempstead* for petitioner.

We contend, that in *not giving notice of the proposed increase of the assessment on the petitioner's property*, the Board acted in violation of Section 2575, Revised Statutes of Utah, and that any such increase, without such notice, and an opportunity to be heard, would be in violation of the Fifth Amendment to the Constitution of the United States, as also of Sec. 7, Art. 1, of our State Constitution, and would deprive the citizen of his property without "due process of law."

The authorities fully support the above proposition. *Stuart* v. *Palmer*, 74 N. Y., 183; *Philadelphia* v. *Miller*, 49 Penn., 440; Trustees of N. Y. Prot. Epis. Public Schools, 31 N. Y., 574; *Ireland* v. *City of Rochester*, 51 Barb., 414; *Overing* v. *Foote*, 65 N. Y., 263; Cooley on Taxation, p. 265; *Campbell* v. *Dwiggins*, 83 Ind., 482; *Gatch* v. *Des Moines*, 63 Iowa, 723; *Mayor* v. *Hospital*, 56 Md., 46; *Ulman* v. *Mayor*, 72 Md., 593; *State* v. *Lindell Hotel Co.*, 9 Mo. App., 456; *Relfe Life Ins. Co.*, 11 Mo. App., 379; *South Pacific Land Co.* v. *Buffalo Co.*, 7 Neb., 259; *Baker* v. *Omaha*, 16 Neb., 270; *Oregon Steam Nav. Co.* v. *Wesco Co.*, 2 Oregon, 209; *Avant* v. *Flynn*, 2 S. Dak., 163; R. R. Tax Case, 8 Sawyer, 291; 25th Encyclopedia of Law, 251.

The decisions are also numerous and to the same effect in California, from which State we adopt our statute in relation to the Board of Equalization; the leading case and one directly in point is *Patten* v. *Green*, 13 Cal., 328; *Wells* v. *State Board of Equalization*, 56 Cal., 206;

*Spring Valley* v. *Schottler*, 62 Cal., 103; *Hagersmeyer* v. *Mendocino Co.*, 82 Cal., 217; *Detroit* v. *Phillips*, 104 Cal., 164; S. C., 108 Cal., 315.

Our statute contemplates and requires notice in some form to be given to the tax payer before an increase of his assessment can be made, and we contend that such requirement of the statute is mandatory. Cooley on Taxation, 267.

*Graham F. Putman, Esq., Ray Van Cott, Esq.*, and *Walker T. Gunter, Esq.*, for respondents.

The county boards, in performing their duties of adjustment and equalization, may proceed in two different ways: First, as a board of review or appeal, sitting to hear complaints by different individuals of the action of the assessor; Second, as a board of adjustment and equalization, raising and lowering property in districts for the purpose of making uniform assessments throughout the county. The authorities recognize these two methods of performing the duties of boards of equalization. Cooley on Taxation, 419, 421; 25 Am. & Eng. Ency. of Law, 247–249; *Salt Lake City* v. *Armstrong*, 16 Utah, 472.

Our constitution expressly gives them the latter function, and the statutes provide for the exercise of the former. Constitution, Art. 13, Sec. 11; Revised Statutes, Secs. 2575–2577.

It is submitted that without the power to make reductions and increases in assessments by general orders passed without giving notice to each individual affected, the constitutional functions of the county boards of equalization can not be exercised. These are, as stated above, to make valuations just and uniform so that the same kinds and classes of property in all parts of the county shall be assessed alike; and secondly, to see to it that all property

is assessed for its full cash value. *State* v. *Thomas*, 50 Pac., 616; Constitution, Art. 13, Secs. 2, 3.

Orders similar to the one here in question have been upheld in other States by courts of high authority. *Hallo* v. *Helmer*, 12 Neb., 87; *Suydam* v. *Merrick Co.*, 19 Neb., 155; *State* v. *Edwards*, 31 Neb., 369; *Railroad Co.* v. *Smith*, 19 Kan., 225; *Gillett* v. *Treas. Lyon Co.*, 30 Kan., 166; *Fields* v. *Russell*, 38 Kan., 720; *Challiss* v. *Rigg*, 30 Pac., 190; *Kelley* v. *Carson*, 8 Wis., 182; *Hambleton* v. *Dempsey*, 20 Ohio, 168; *Getchell* v. *Supervisors*, 51 Iowa, 107; *Collier* v. *Morrow*, 90 Ga., 148.

The true rule, as we understand it, is that where a public board sits at a given time and place fixed by law and of which, therefore, all persons are affected with notice, their action is not in violation of the constitution for want of notice. State Railroad Tax Cases, 92 U. S., 575; *Porter* v. *Railroad Co.*, 76 Ill., 561, 598; *Spalding* v. *Hill*, 86 Ky., 656; *Railroad Co.* v. *Commonwealth*, 81 Ky., 504; *State* v. *Lindell Hotel Co.*, 9 Mo. App., 450. See also cases cited *supra*.

Bartch, C. J.

This is an application, original in this court, for a writ of certiorari to command the county board of equalization of Salt Lake County to return to the supreme court all the proceedings concerning a certain resolution of the board whereby the assessment of certain property in Salt Lake City for the year 1898 was increased. The writ was issued, and upon a return being filed, the plaintiff demurred generally thereto. It is admitted by the pleadings, and because of the demurrer, that at the time when the resolution in question was adopted, the defendants were sitting as the county board of equalization, and that the

board, after carefully examining the assessments of real estate in Salt Lake City, as made by the assessor, and hearing evidence with regard to the valuations, decided that changes in the valuations were necessary to correct errors made by him in valuing portions of the real estate, and to make the assessments conform to the value of the property in money.   The resolution, or order complained of, relates to certain portions or districts of the city, and under its terms, the assessment on all real estate in such districts was raised by adding a certain percentum to the valuation placed upon it by the assessor.   The real estate of the relator was included within those districts, and the order was made without service of notice on each owner of property affected by the change in valuation.   Counsel for the relator contend that the order, having been made without such notice, is unauthorized by law and beyond the jurisdiction of the board, and is, therefore, void. The defendants maintain that, when sitting as a board of equalization, they have power to raise or lower the assessment in any district in the county when necessary to make the valuations of property conform to its true value in money, and that the general notice of their sitting as such board is sufficient.   Respecting the subject of taxation, it is provided in Section 2, Article 13 of the constitution of this State, as follows: "All property in the State, not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law."

· Section 3 of the same article, so far as material here, reads: "The legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the State, according to its value in money, and shall prescribe by general law such regulations as shall secure a just valuation for taxation of all property; so that every

person and corporation shall pay a tax in proportion to the value of his, her, or its property."

Commenting on these provisions of the constitution, this court in *State* v. *Thomas*, 16 Utah, 86, observed: "The manifest intention is that all taxable property shall bear its just proportion of the burdens of taxation. These two sections of the constitution harmonize with each other; and, by reading and considering them together, it becomes clear that all taxable property within this State must be assessed and taxed on a valuation fixed at its actual cash value, or as near such value as is reasonably practicable."

Doubtless, to guard against unjust valuations, which might result from whatever cause, and to secure greater uniformity and equality in taxation, there was made, in Section 11 of the same article, provision for equalization and adjustment of values as follows: "Until otherwise provided by law, there shall be a State Board of Equalization, consisting of the Governor, State Auditor, State Treasurer, Secretary of State, and Attorney General; also, in each county of this State, a County Board of Equalization, consisting of the Board of County Commissioners of said county. The duty of the State Board of Equalization shall be to adjust and equalize the valuation of the real and personal property among the several counties of the State. The duty of the County Board of Equalization shall be to adjust and equalize the valuation of the real and personal property within their respective counties. Each board shall also perform such other duties as may be prescribed by law."

Under this section, a State and County Board of Equalization were created, and upon each was imposed the duty of equalizing and adjusting valuations of property for taxation. The State Board is to equalize and adjust valuations between the several counties, and the County

Boards are to equalize and adjust the valuations of property within their respective counties. These Boards are the means devised by the constitution makers for the purpose of equitably distributing the public burden among the subjects that are charged with it. It is their duty to correct errors and remove inequalities which are likely to occur in assessments because of the valuations in the several districts of a county being made by different persons who differ in judgment as to the actual value of property. No method of procedure for the Boards is prescribed by the organic law. On this subject, and in reference to Sec. 11, this court, in *Salt Lake City* v. *Armstrong*, 15 Utah, 473, said : "The last section makes it the duty of the County Board to adjust and equalize the valuation of the real and personal property within their respective counties, without prescribing the mode to be adopted. This leaves the Board the discretion to adopt any reasonable and just method, and if, upon an examination and investigation of the assessment, the Board shall be of the opinion that the real estate in a particular locality is too high, and that in other localities the assessment is too low, it would appear to be a reasonable exercise of its authority to prescribe the localities, and raise or lower the valuation so as to equalize the assessment in such districts."

So in *State* v. *Thomas, supra,* it was said, "The action of that Board is not restricted to the total valuation made by the assessor. Evidently, its duty is to adjust and equalize the valuation of the property within its county. Its action is, therefore, confined within the limits of the county; but, within such limits, it has power to raise or lower the individual assessments, so as to make the valuation uniform and equal, and so that the burden of taxation may be apportioned equitably among the tax payers in proportion to the value of their property. Its action may

extend to any locality or particular district of the county. It has the right to determine the value of property, and, if necessary for the purpose of equalization, may raise the valuation of one district, and lower that of another, even though by such action the total valuation of the property of the county may be increased or decreased."

As will be observed, none of the constitutional provisions referred to require a County Board, sitting as a Board of Equalization, before it proceeds to raise or lower the valuation of an entire class of property in a district or locality, to give notice to each or any owner of such property.

Counsel for the relator, however, insist that such notice is provided for in Sec. 2575, R. S., and that in this case, the Board acted in violation of that section, which reads as follows: "The Board has power, after giving notice in such manner as it may by rule prescribe, to increase or lower any assessment contained in the assessment book, so as to equalize the assessment of the property contained therein and make the assessment conform to the true value of such property in money."

The notice required under this section doubtless applies to cases where individual assessments are affected, and not to those where the property of an entire district or locality is involved. For the Board to give notice to each individual the valuation on whose property will be affected by the raising or lowering of the assessment on all of a certain class of property in a district, would be impracticable. To say nothing of the expense of giving such notice, the delay which would be occasioned by hearing each individual in a large district and the evidence he might choose to present would render the exercise of the most important functions of the Board impossible. This becomes manifest by a perusal of Sec. 2574, R. S. 1898,

which specifies the time when, in each year, the County Boards of Equalization must meet, and limits the time during which they may sit. This section also makes it the duty of such Boards to "examine the assessment books and equalize the assessment of property in the county." In doing this such a Board has the right, although it may hear evidence or not as it choose, to act upon the knowledge and judgment of its own members. Such members are or ought to be selected because of their general intelligence and probity, knowledge of the county, and of the value of the property of the county, and, therefore, ought not to be hampered in the performance of their duties by being compelled to give notice in cases like the one at bar, to the individuals who own property in districts in which the assessments must be equalized by raising or lowering them in order to make the valuations conform to the true constitutional standard. The statute prescribing the time and place for the meeting of the Board, gives sufficient notice to each individual owner of property that the assessment of the entire district may be changed during such meeting, and such notice will afford all an opportunity to be heard.

"These Boards act judicially in equalizing, and their decision is conclusive. They are commonly composed of popular representatives, and they act upon their own judgment of what is equal and just. They are not bound to give notice to tax payers before raising the assessment of a district, except as the statute may provide for it. In raising or reducing the assessment of a district, it is sufficient for the Board to designate a percentage of increase or reduction. A failure of the Board to sit from day to day as directed by the statute will not invalidate the taxes if, in fact, full opportunity to be heard and make objections was given to all." Cooley on Taxation, 422.

In the State Railroad Tax Cases, 92 U. S., 575, Mr. Justice Miller, delivering the opinion of the court, said: "It is hard to believe that such a proposition can be seriously made. If the increased valuation of property by the Board without notice is void as to the railroad companies, it must be equally void to every other owner of property in the State, when the value assessed upon it by the local assessor has been increased by the Board of Equalization. How much tax would thus be rendered void it is impossible to say. The main function of this Board is to equalize these assessments over the whole State. If they find that a county has had its property assessed too high in reference to the general standard, they may reduce its valuation; if it has been fixed too low, they raise it to the standard. When they raise it in any county, they necessarily raise it on the property of every individual who owns any in that county. Must each one of these have notice and a separate hearing? If a railroad company is by law entitled to such notice, surely every individual is equally entitled to it. Yet if this be so, the expense of giving notice, the delay of hearing each individual, would render the exercise of the main function of this Board impossible. The very moment you come to apply to the individual the right claimed by the corporation in this case, its absurdity is apparent. Nor is there any hardship in the matter. This Board has its time of sitting, fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong; and in the business of assessing taxes, this is all that can be reasonably asked."

So in *Suydam* v. *Merrick Co.*, 19 Neb., 155, Mr. Justice Cobb, speaking for the court, said: "When complaint is made that a certain individual is assessed too low, then it is a condition precedent to action thereon by the

Board, that such individual owner have notice of such proceeding. But the increase of the assessment of a precinct is not upon any one's complaint, but arises in the official mind and judgment of the commissioners, upon an inspection and comparison of the assessment rolls of the several precincts. The law has designated no officer or person upon whom notice could be served or to represent the precinct at such equalization. The county commissioners themselves are the only and proper representatives of the precinct, and as they constitute the Board of Equalization no notice need be served on them." 25 Am. and Eng. Ency. Law, 247, 249, 253, 254; *S Cammon* v. *City of Chicago*, 44 Ill., 269; *Hyland* v. *The Brazil B. C. Co.*, 128 Ind., 335; *Gillett* v. *Treasurer of Lyon Co.*, 30 Kan., 166; *County of Santa Clara* v. *Southern Pac. R. R. Co.*, 18 Fed. Rep. 385; *Pittsburgh, etc., R. R. Co.* v. *Backus*, 154 U. S., 421; *St. Jos. & D. C. R. R. Co.* v. *Smith*, 19 Kan., 225; *Challis* v. *Rigg*, 30 Pac. Rep., 190; *Hallo* v. *Helmer*, 12 Neb., 87; *Spaulding* v. *Hill*, 86 Ky., 656; *Hambleton* v. *Dempsey & Co.*, 20 Ohio, 168; *State, etc.,* v. *Runyon*, 41 N. J. L., 98; *Nugent* v. *Bates*, 51 Ia., 77; *Collier* v. *Morrow*, 90 Ga., 148; *Porter* v. *R. R. I. & St. L. R. R. Co.*, 76 Ill., 561; *Cin. N. O. & Texas Pac. R. R. Co.* v. *the Commonwealth*, 81 Ky., 492; *St. Louis, L. M. & S. R. R. Co.* v. *Worthen*, 7 L. R. A., 374; *State* v. *Edwards*, 31 Neb., 369; *Fields* v. *Russell* 38 Kan., 720; *Hann. & St. Jo. R. R. Co.* v. *State Board of Equalization*, 64 Mo., 294; *Kelley* v. *Corson*, 8 Wis., 57.

The objection that the action of the Board in this case deprives the relator of his property without due process of law in violation of Sec. 7, Art. 1, of the Constitution is not tenable. So far as appears from the record, the assessment had been made by the assessor in the

usual manner as provided by law, the board convened at the time and place and in the manner prescribed by law, and the relator had statutory notice of the time and place of such meeting, and consequently an opportunity to be heard.   Then after becoming convinced, from their personal knowledge of the value of property, and from the testimony of witnesses appearing before them, that the real estate in the district affected was assessed at less than its cash value, the Board, after due consideration, made the order increasing the valuation of all the real property in the district so as in their judgment to make it conform to the constitutional standard of valuation.   It is not necessary to the validity of a tax in this country that there should be a regular judicial proceeding.   The nature of the duties to be performed, the usages of the people, and the necessities of government have established a different method of procedure respecting taxation from that pursued in courts, and the pursuing of such method has always been regarded due process of law.   *Kelley* v. *Pittsburgh*, 104 U. S., 78; *Pittsburgh, etc., R. R. Co.* v. *Backus*, 154 U. S., 421: *Davidson* v. *New Orleans*, 96 U. S., 97.

We are of the opinion that the County Board of Equalization had jurisdiction to adopt the resolution in question and thereby raise the assessment, as therein specified.   The relief prayed for by the relator must be denied, with costs.

It is so ordered.

Miner, J. and Baskin, J., concur.