THE STATE OF UTAH ex relatione SALT LAKE CITY, a Municipal Corporation, Relator, v. BENJAMIN R. ELDREDGE, as County Assessor, and Another, Respondents.

No. 1550.     (76 Pac. 337.)

1. Taxation: Statutory Construction: Intention.

In construing a constitutional provision the intention of the framers must prevail, whatever language may have been employed to express it.

3. Same.

In construing a particular section of a constitutional provision, the court may refer to any other section or provision to ascertain the object, purpose, and intention of the framers in adopting the section.

5. **Same.**

It is a rule of statutory and constitutional construction that the meaning of general words will be restricted when it is found necessary in order to carry out the intention of the lawmakers.

4. **Same: Local Self-Government.**

The principle that local authority shall manage and control local affairs permeates the whole system of American government, and the Constitution of Utah was framed with that principle in view.

2. **Same: Assessment: Power of Legislature.**

In the absence of a constitutional system of taxation and of constitutional restraint, the Legislature has absolute power to adopt any means it sees fit for the purpose of assessing property and raising revenue to defray governmental expenses.

7. **Same: State Board of Equalization.**

The Legislature has power to authorize the State Board of Equalization to assess, for revenue purposes, property situated partly in one county and partly in another, or operated in two or more counties.

6. **Same: Assessment of Property Within County: Constitutionality of Statute.**

Constitution, article 13, section 11, creates a State Board of Equalization, and also a similar board in each county, the duty of the State Board being to adjust and equalize the value of property among the several counties, and the duty of the county board to adjust and equalize the valuation of property within the county. It also provides that each board shall "also perform such other duties as may be prescribed by law." Article 8, section 5, provides that all legal business arising in any county shall be tried in such county, and article 13, section 5, forbids the Legislature to impose taxes for the purpose of any county, city or other municipality, but gives it power to vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation. Article 11, section 4, provides that the Legislature shall establish a system of county government uniform throughout the State, and by general laws provide for precinct and township organizations. *Held*, that Laws 1899, page 102, chapter 68, amending Revised Statutes 1898, section 2513, and providing that property and franchises owned by railroad and certain other companies must be assessed by the State Board of Equalization, in so far as it conferred power on

such board to assess property the situs and operation of which were wholly within one county, violated Constitution, article 13, section 11, as construed in the light of the principle of local self-government imminent in the Constitution, and could not be justified under the clause in such section giving the board power to perform other duties prescribed by law.[1]

(Decided April 16, 1904.)

Original application for an alternative writ of prohibition.

WRIT DENIED.

Charles C. Dey, Esq., City Attorney, for relator.

George Westervelt, Esq., County Attorney, and Andrew Howat, Esq., for respondents.

BARTCH, J.—This is an application for an alternative writ of prohibition, and is a proceeding original in this court. The object of the relator is to prohibit the assessor of Salt Lake county from assessing certain property situate within that county, claiming that it should be assessed by the State Board of Equalization. Its contention is that the authority to assess or value the property in question, for the purposes of taxation, is lodged in that board by virtue of the amendment of section 2513, Rev. St. 1898, contained in Sess. Laws 1899, p. 102, c. 68. The section, as amended, reads: "All property and franchises owned by railroad, street railway, car, depot, telegraph and telephone companies in this State must be assessed by the State Board of Equalization as hereinafter provided. Other fran-

---

[1] State v. Thomas, 16 Utah 86, 50 Pac. 615; Salt Lake County v. Board of Equalization, 18 Utah 172, 55 Pac. 378; Transit Co. v. Lynch, 18 Utah 378, 55 Pac. 639, 48 L. R. A. 790; Salt Lake City v. Armstrong, 15 Utah 472, 49 Pac. 641; State of Utah v. Armstrong, 19 Utah 117, 56 Pac. 1076; State v. City Council, 23 Utah 13, 64 Pac. 460; State v. Standford, 24 Utah 148, 66 Pac. 1061.

chises, if granted by the authorities of a county or city, must be assessed in the county or city within which they were granted; if granted by any other authority they must be assessed in the county in which the corporation, firms, or persons owning or holding them have their principal place of business." As this section appears in the Revised Statutes, it contains, after the words "telephone companies," the words "operating in more than one county," but does not contain the word "depot." As amended in chapter 68, p. 102, Sess. Laws 1899, it is literally a copy of section 12, c. 129, Sess. Laws 1896, and, if valid, it confers power upon the State Board of Equalization to assess all the property therein mentioned, whether situate or operated within one county, or in two or more counties. This the defendants admit, but, in doing so, they contend that, to the extent that the amended section attempts to confer power upon the State Board of Equalization to assess or value for taxation any property situate and operated wholly within one county, it is in conflict with section 11, art. 13, of the Constitution of this State, and to that extent is inoperative and void. Section 11 reads: "Until otherwise provided by law, there shall be a State Board of Equalization, consisting of the Governor, State Auditor, State Treasurer, Secretary of State and Attorney-General; also, in each county of this State, a county board of equalization, consisting of the board of county commissioners of said county. The duty of the State Board of Equalization shall be to adjust and equalize the valuation of the real and personal property among the several counties of the State. The duty of the county board of equalization shall be to adjust and equalize the valuation of the real and personal property within their respective counties. Each board shall also perform such other duties as may be prescribed by law."

As will be noticed, by this section of the Constitution there were created and established two boards of equalization, each to act, and discharge duties, inde-

pendent of the other.   Each was designed to perform
special and important functions.    Both are creatures
of the Constitution—of the sovereignty itself—and each
is endowed with unlimited power to operate within a
limited sphere.   The powers and duties of the State
Board are to "adjust and equalize the valuation" of all
property, for the purposes of taxation, "among the sev-
eral counties of the State."    The powers and duties of
county boards are to "adjust and equalize the valua-
tion" of all property, for the purposes of taxation,
"within their respective counties."    The territorial
limits of the State Board, within which it may perform
its functions, are coextensive with those of the State,
while those of a county board are coextensive with those
of the county, neither one of the boards having power
to perform acts which will be an encroachment upon
the domain of the other, or upon that of any other offi-
cer.    This is so, notwithstanding that the State Board
has power, if necessary for the purposes of equaliza-
tion, either to raise or lower the total valuation of the
property of any county fixed by the county board and
assessor.    Although it may do this, it can not, under
any of the provisions of section 11 of the Constitution
thus far considered, invade the province of a county
board in an attempt to adjust and equalize valuations
of property, wholly within one county, as between in-
dividuals.   State v. Thomas, 16 Utah 86, 50 Pac. 615.
Nor do any of these provisions empower the State
Board to invade the province of an assessing officer to
assess or value property, situate wholly within one
county, for the purposes of taxation.   If such power
exists in that board, it exists by virtue of the amended
section of the statute above quoted, which, the relator
insists, is a valid exercise of legislative power, under
the last sentence in section 11 of the Constitution, above
quoted, where it is provided that "each board shall per-
form such other duties as may be prescribed by law."
The question, then, is, does this provision empower the

Legislature to prescribe duties for that board other than such as pertain to the adjustment and equalization of the valuation of property, for revenue purposes, among the several counties of the State? In other words, was it the intention of the framers of the Constitution, by this last provision of the section, to confer power upon the Legislature to authorize the State Board to assess property situated and operated wholly within a single county, and thus extend the domain or sphere of that board as limited by the express provisions immediately preceding? The intention of the framers of the Constitution, whatever language may have been employed to express it, must prevail. Such intention, after the adoption of the Constitution by the people, became the will of the sovereignty expressed in the supreme law, and any legislative enactment which does not conform to such will is without force and void.

In determining the question here presented, we must not be unmindful of the fact that the assessment and collection of taxes, for the support of the government, are among the highest acts of supreme power. Where, therefore, the sovereignty itself prescribes a system for the assessment of property for the purposes of revenue, every branch of the government is bound by it. But in the absence of such a system in the paramount law, and of constitutional restraint, the Legislature has absolute power to adopt any means it sees fit for the purpose of assessing property to raise revenue to defray the expenses of the government. The power to tax property for governmental purposes is inherent in the State, and may be exercised by the Legislature, subject to constitutional restrictions. The Constitution does not confer such power upon the Legislature, but imposes limitations and restrictions upon the inherent power, so as to effectuate the object and intentions of the framers of the Constitutions, and of the people who adopted it. In construing the supreme law, the meaning of the framers must be ascer-

**3** tained from the whole purview of the instrument, and, in construing a particular section, the court may refer to any other section or provision to ascertain what was the object, purpose, and intention of the Constitution makers in adopting such section. In a case like this the court will also consider the system of government in vogue prior to and at the time of the framing of the Constitution, and the political history of the country, and, out of the different constructions possible, will adopt and apply that which is most in accord with the genius of our institutions, the one most likely intended by the framers of the instrument. Texas & Pac. Ry. v. Inter-State Com., 162 U. S. 197, 218, 16 Sup. Ct. 666, 40 L. Ed. 940.

One of the distinctive features of our republican form of government is the system of local self-government, whereby local governmental affairs are ad-

**4** ministered by local authorities, and not by agents of the general government. History shows that this system, which permits the people to control local affairs, has existed in this country since the inception of the government, and it will continue to exist so long as our American Union lasts, because it has become a principle in our framework of government, and an inseparable incident to the government itself. All our institutions were founded with a view to local self-government, and assume its continuance as one of the undoubted rights of the people. Cooley, Const. Lim. 207. Looking into the Constitutions of the several States and of the United States, it will readily be observed that the intention of the framers of those instruments was that the agencies by which power was to be exercised should be brought as close as possible to the subjects upon which the power was to operate. When the care exercised and means adopted are taken into consideration, the conclusion seems irresistible that the design was to bring the agencies and subjects into the closest possible proximity. The design of juxtaposition of agencies and subjects is clearly discernible by an examination

of our American constitutional law. It is, likewise,
under the English system of government, from which,
doubtless, our forefathers obtained the idea. In con-
tradistinction to a purely monarchial form of govern-
ment, where power is concentrated in one supreme
ruler, our American system of government is opposed
to centralization of power. The idea which permeates
our whole system is that local authority shall manage
and control local affairs. These are inalienable rights
of the people, guaranteed by the Constitution of the
United States, and can not be taken away. "Local self-
government," says Judge Cooley, "having always been
a, part of the English and American systems, we shall
look for its recognition in any such instrument. And,
even if not expressly recognized, it is still to be under-
stood that all these instruments are framed with its
present existence and anticipated continuance in view."
Cooley, Const. Lim. 47. See, also, page 223, Id. The
Constitution of this State, the same as of every other
State, was framed with local self-government in view.
History shows that the territory which is comprised
within the boundaries of this State constituted, under
the territorial form of government, a system of subdi-
visions, having been divided into counties, precincts,
and other districts and municipalities. Each of these
subdivisions had, under the general laws of the terri-
tory, a system of local self-government, whereby local
affairs were controlled by local authorities elected by
the people of the subdivision. This was so as to tax-
ation, as well as to other subjects. When the Consti-
tution was framed, the same system of subdivisions and
local government was adopted, with, in some instances,
closer adherence to local government, as where it is pro-
vided that all legal business arising in any county shall
be tried in such county (article 8, sec. 5), and where
the Legislature is forbidden to "impose taxes for the
purpose of any county, city, town or other municipal
corporation, but may by law, vest in the corporate au-
thorities thereof, respectively, the power to assess and

collect taxes for all purposes of such corporation."
Article 13, sec. 5.   Here is indicated an intention to
have local business transacted and local affairs man-
aged and controlled by local authorities.   And the term
"assess," as here employed, has a comprehensive mean-
ing.   It includes the valuation of property, as well as
the levying of the rate of taxation.   The spirit of local
self-government which permeated the framers of the
Constitution becomes yet more manifest when the pro-
vision of section 4, art. 11, that "the Legislature shall
establish a system of county government, which shall
be uniform throughout the State, and by general laws
shall provide for precinct and township organizations,"
is considered.   Here is an express provision of the
fundamental law recognizing such government.   The
fact is that every provision of the Constitution relating
to this important subject appears to manifest an inten-
tion to bring those through whom power is to be exer-
cised as close as possible to the subjects upon whom the
power is to operate—to preserve the right of local self-
government to the people, and to restrict every en-
croachment upon such right.   And, as has been seen,
this is in harmony with history, with our American con-
stitutional law, with our notions of decentralization of
power, and with the spirit and genius of our institu-
tions.

In the light of these considerations, the conclusion
is inevitable that there was no intention on the part of
the framers of the Constitution by the use, in the last
sentence of section 11, art. 13, of the general words,
"such other duties as may be prescribed by law," to
confer power upon the Legislature to authorize the
State Board of Equalization, a State agency with power
over general State affairs, to invade the province of
local officers and administer local affairs by assessing,
for revenue purposes, property the *situs* and operation
of which is wholly within one county.   If the construc-
tion which the relator seeks to place upon that language
of the Constitution were to be adopted, then there would

seem to be no reason why the State Board, by legislative enactment, might not be authorized to also levy and collect the taxes upon property situate wholly within one county, or to perform any other local duties which the Legislature might see fit to impose upon the board. As will be noticed, this would clearly be in violation of section 5, art. 13, which directs the Legislature to vest in the corporate authorities the power to assess and collect taxes for local purposes. With power so vested, the corporate authorities, with the county board of equalization, constitute all the officers necessary to secure "a uniform and equal rate of assessment and taxation" in a county, agreeably to the provisions of section 3, art. 13, without any interference by the State Board. That the intention of the framers of the Constitution was to confine the duties of the State Board to adjusting and equalizing the valuation of taxable property among the several counties of the State, and to doing such things as are necessary or incidental to such adjustment and equalization, we entertain no doubt; and, to carry out such intention, it becomes the duty of the court to read the general words in the last sentence of section 11 in the light of the previous words with which they are associated and which confer the power, and to so construe the language employed, in view of the conditions and considerations which confronted and actuated the framers of the instrument, as not to enlarge the powers conferred. It is a rule of statutory construction, which may be applied with equal force in constitutional construction, that the meaning of general words will be restricted whenever it is found necessary to do so in order to carry out the intention of the lawmaking power. Under this rule the general words "other duties," used in the last sentence of the section, must be restricted to mean other duties of similar character with duties indicated in the previous provision to be performed by the State Board. The duties intended to be performed by that board are all such as pertain to the adjustment and equalization of the valuation of

taxable property among the several counties of the State, and the Legislature has no power to authorize that board to perform any acts which are not in their character and nature calculated to effect such adjustment and equalization.

In United States v. Bevans, 3 Wheat. 336, 4 L. Ed. 404, a similar question of construction was before the Supreme Court of the United States. In that case the defendant was indicted, for the crime of murder, in the Circuit Court of the District of Massachusetts, and convicted of that crime. At the time the offense was committed the prisoner and the deceased were in the service of the United States, on board a ship of war, where the fatal act was committed. At the same time the ship was lying at anchor in the main channel of Boston Harbor. In the act under which the prisoner was tried it was, among other things, provided "that if any person or persons, shall, within any fort, arsenal, dockyard, magazine, or in any other place, or district of country, under the sole and exclusive jurisdiction of the United States, commit the crime of willful murder, such person or persons, on being thereof convicted, shall suffer death." If, in construing that statute, full effect had been given to the general words "or any other place, or district of country, under the sole and exclusive jurisdiction of the United States," they would have included the offense charged, because it was committed on board a ship of war, and it was contended that a ship of war, on the deck of which the crime was perpetrated, was a place within the sole and exclusive jurisdiction of the United States. But the court held that a murder committed on board a ship of war lying within the harbor of Boston was not cognizable in the Circuit Court for the District of Massachusetts, and, in construing the statute, said: "The objects with which the word 'place' is associated are all in their nature fixed and territorial. A fort, an arsenal, a dockyard, a magazine, are all of this character. When the sentence proceeds with the words, 'or in any other place or district of

country under the sole and exclusive jurisdiction of the United States,' the conclusion seems irresistible that by the words 'other place' was intended another place of similar character with those previously enumerated.'' Suth., Stat. Const., sections 262-266; Reiche v. Smythe, 13 Wall. 162, 20 L. Ed. 566; United States v. Freight Association, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; Brewer v. Blougher, 14 Pet. 178, 198, 10 L. Ed. 408.

From the foregoing considerations it is clear that the Legislature has no power, under the Constitution, to authorize the State Board of Equalization to assess or value property, for the purposes of taxation, the situs and operation of which are wholly within one county. In so far as section 2513, Rev. St. 1898, Sess. Laws 1899, p. 102, c. 68, undertakes to confer such authority upon that board, it is in contravention of the Constitution, and is null and void. The Legislature however, as this court decided on previous occasions, has power to authorize the State Board to assess, for revenue purposes, property situate partly in one county and partly in another, or operated in two or more counties, because the assessment of such property may fairly be regarded as an act of adjusting and equalizing the valuation of property between different counties of the State. The views herein expressed are not opposed to, but are in harmony with, our former decisions, under the Constitution, on the subject of taxation. State v. Thomas, 16 Utah 86, 50 Pac. 615; Salt Lake County v. Board of Equalization, 18 Utah 172, 55 Pac. 378; Transit Co. v. Lynch, 18 Utah 378, 55 Pac. 639, 48 L. R. A. 790; Salt Lake City v. Armstrong, 15 Utah 472, 49 Pac. 641; State of Utah v. Armstrong, 19 Utah 117, 56 Pac. 1076; State v. City Council, 23 Utah 13, 64 Pac. 460; State v. Stanford, 24 Utah 148, 66 Pac. 1061.

The writ of prohibition must be denied, with costs. It is so ordered.

BASKIN, C. J., and McCARTY, J., concur.